UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------x
KRISTIN B. MILTON,    Case No.

        Plaintiff,

   -against-    **VERIFIED COMPLAINT**

TONI CARROLL TERMAN, PHILIP TERMAN and
INFINITY PUBLISHING CORP.,    Plaintiff Demands
                Trial by Jury
        Defendants.
----------------------------------------x

    Plaintiff, Kristin B. Milton ("Plaintiff"), by her attorneys, Certilman Balin Adler & Hyman, LLP, as and for he complaint against Defendants, Toni Carroll Terman ("Carroll"), Philip Terman ("Terman") and Infinity Publishing Corp. ("Infinity Publishing"), (collectively "Defendants") alleges as follows:

### PARTIES

    1. Plaintiff is a resident of the State of New York, County of Nassau, and is the literary author of an unpublished manuscript about the Copacabana Night Club (the "Copacabana").

    2. Upon information and belief, Defendant Carroll, is a resident of the State of New York who resides at 353 W. 56th Street, Apt. 2M, New York, NY and was formally employed by the Copacabana.

RECEIVED APR 09 2007 U.S.D.C. S.D.N.Y. CASHIERS

3. Upon information and belief, Defendant Terman also resides at 353 W. 56th Street, Apt. 2M, New York, NY and is the husband of Defendant Carroll.

4. Upon information and belief, Defendant Infinity Publishing is a New York corporation with its principal offices located at P.O. Box 20379, Cathedral Finance Station, New York, NY 10025 and is the publisher of a certain book entitled "Copacabana Sexcapades and Other Stories" which is purported to be authored by Defendants Carroll and Terman.

## JURISDICTION

5. This Court has jurisdiction over this case as the controversy of the Federal Copy Right Law in violation of 17 USC §301.

## VENUE

6. Venue of this case is proper in this district pursuant to 28 USC §1400 (a) 13 and 28 USC 1391(b).

## BACKGROUND

7. In or prior to 1988, Plaintiff Milton became interested in and started to create a file to write a future book about the Copacabana.

8. On or about July 15, 1988, Plaintiff Milton contacted Defendant Carroll and proposed the idea for a book about the Copacabana and sought Carroll's participation and collaboration to provide background, resource materials and access to persons

1886285-1                              2

with first-hand knowledge of events at the Copacabana. In July 1988, Plaintiff Milton sent Defendant Carroll a copy of a draft overview for such a book about the Copacabana.

9. On or about October 29, 1988, Plaintiff and Defendant Carroll entered into a written agreement wherein it was agreed, in essence, that:

    a. Defendant Carroll will provide access to individuals associated with the Copacabana (e.g. Copa Girls, celebrities, club personnel, etc.), resource materials, information, photographs, anecdotes, etc. that will comprise the body of the proposal-book. Plaintiff Milton will be responsible primarily for organizing the material, drafting the proposal-book and determining the completed manuscript of the book;

    b. Defendant Carroll and Plaintiff Milton will be included in the copyright of the book;

    c. Cover credit will appear as Kris Milton and Toni Carroll; and

    d. The proceeds-profits-expenses of the book will be divided 50/50.

10. Between 1988 and 1992, Plaintiff drafted, revised and organized the proposed literary submissions for a Copacabana

book so that by 1992 the literary submission could be given to literary agents and publishers. These submissions consisted of a proposal, a book outline, sample chapter and profiles.

11. Between 1992 and 1995, the literary materials prepared by Milton were submitted to numerous publishers and were also revised and improved by Plaintiff Milton. At not time did Defendant Carroll prepare any written literary material.

12. In 1994, Plaintiff Milton and Defendant Carroll entered into a contract with Republic Pictures wherein Plaintiff and Defendant Carroll received a $10,000.00 signing advance wherein Republic Pictures had a one (1) year option to create a television or theatrical production. The option was not exercised by Republic Pictures.

13. Between 1997 and 1998, Plaintiff contacted publishers and submitted her literary submissions for the purpose of publishing, including self-publishing, a Copacabana book.

14. In March 1998, Plaintiff Milton contacted Jay Street Publishers Corp ("Jay Street Publishers") for the purpose of having the Copacabana book self-published.

15. Upon information and belief, subsequently Defendant Carroll signed a contract with the Jay Street Publishers in an attempt to eventually publish a Copacabana book. In fact, Defendant Carroll gave Plaintiff Milton's outline and literary submissions to Abner Kohn ("Kohn") to attempt to draft a book

1886285-1                                     4

using Milton's outline and literary submissions about the Copacabana without Plaintiff Milton's knowledge or consent.

16. Upon information and belief, Kohn was completely unaware of Plaintiff's role in the writing and creating of the outline and literary submissions which he was using to attempt to draft a Copacabana book.

17. In December 1999, Plaintiff Milton made Kohn aware she was drafting a Copacabana book manuscript. Simultaneously, Defendant Carroll sent written correspondence to Plaintiff praising her work.

18. Between 2000 and June 2001, Plaintiff Milton and Defendant Carroll engaged in a dispute over whether Defendant Carroll and the other Copa Girls (dancers) or the Copacabana Club itself, would be the central topic of the book. In the summer of 2001, Plaintiff finished her manuscript about the Copacabana night club. The parties then had meetings and exchanged correspondence in an attempt to negotiate a resolution of differences relating to the Copacabana book, but without success.

19. In June 2001, Defendant Carroll sent to Plaintiff Milton a correspondence dated June 5, 2001 terminating the Agreement of October 29, 1988.

20. In the summer of 2002 Milton completed her manuscript about the Copacabana.

21. Between 2001 and 2003, the Parties continued to exchange correspondence in an unsuccessful attempt to resolve differences which included:

    a.    The subject nature of book; and

    b.    The manner in which the book was to be published.

22. On March 4, 2006, Plaintiff Milton became aware, for the first time, that unbeknownst to Plaintiff Milton, Defendants Carroll and Terman had caused a Copacabana book to be published. The book entitled "Copacabana Sexcapades and Other Stories" wrongfully and tortiously uses the entire outline of Plaintiff Milton's unpublished Copacabana manuscript as if it was the literary work of Defendants Carroll and Terman. In fact, it steals much of Plaintiff's literary work "word for word".

23. The book, as published by Defendant Infinity Publishers, is being marketed on a number of websites including, Amazon.com and Barnes & Noble.com.

24. That while some portions of Copacabana Sexcapades attempt to mask the use of Plaintiff Milton's Copacabana book, others use Plaintiff Milton's literary property "word for word". The published book makes no mention of Plaintiff Milton or her role in writing Copacabana Sexcapades which is based upon Milton's manuscript and which has been published without her permission or knowledge.

25. Subsequently, in 2006, Plaintiff published her book The Copacabana (Images of America).

### AS AND FOR A FIRST CAUSE OF ACTION FOR AN INJUNCTION AGAINST DEFENDANT CARROLL, TERMAN AND INFINITY PUBLISHING

26. Plaintiff, repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through 25" as though fully set forth at length herein.

27. Defendants Carroll and Terman have wrongfully and unlawfully converted, misappropriated and used the proprietary literary work of Plaintiff Milton, namely her unpublished Copacabana manuscript, for their own purpose to publish the Copacabana Sexcapades without Milton's participation.

28. Defendants Carroll and Terman have wrongfully and unlawfully used this proprietary literary property of Plaintiff Milton, without her consent, and have claimed in the Copacabana Sexcapades that such work is, in fact, their own literary work product and have at no time acknowledged that Milton's literary proprietary material was used to publish Copacabana Sexcapades.

29. The use of Plaintiff Milton's literary proprietary property by Defendants, as if it were their own, is a tortious conversion of Milton's literary work.

30. The wrongful conversion of Plaintiff Milton's literary proprietary property will make Plaintiff unable to publish her

book about the Copacabana and will cause harm which cannot be quantified in monetary terms.

31. That as a result of this intentional wrongful and unlawful conversion of Plaintiff Milton's literary proprietary work without her consent, Plaintiff Milton is entitled to a permanent injunction enjoining and restraining Defendants Carroll, Terman and/or Infinity Publishing from taking any acts to further reproduce, distribute, sell, disseminate, advertise, reproduce, display or in any way transfer Copacabana Sexcapades to any other person and to require Defendant Infinity Publishers to recall all books which have been disseminated.

32. The publication of Copacabana Sexcapades by Infinity Publishing represents an unlawful and improper conversion by Defendants Carroll and Terman of Plaintiff Milton's literary propriety work and warrants the issuance of such a permanent injunction.

33. Based upon the foregoing, it is respectfully requested that the Court issue an injunction prohibiting Defendants from engaging in any acts to reproduce, sell, transfer, distribute, advertise, reproduce or otherwise display, disseminate and further copies of Copacabana Sexcapades.

## AS AND FOR A SECOND CAUSE OF ACTION AGAINST DEFENDANTS CARROLL AND TERMAN

34. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "33" as though fully set forth at length herein.

35. As a result of Defendants Carroll and Terman's unlawful and inappropriate conversion of Plaintiff Milton's literary work as set forth above, Plaintiff has been damaged by a sum which cannot be determined herein, but is believed to be not less than $1,000,000.00, with interest thereon and punitive damages in the sum of $5,000,000.00.

36. That further based upon the foregoing tortious, malicious and intentional conduct by Defendants Carroll and Terman, Plaintiff Milton is entitled to an award of damages to be determined herein and an additional award of punitive damages in a sum of $5,000,000.00, with interest thereon.

37. Based upon the foregoing, it is respectfully requested that the Court issue a judgment in a sum to be determined at a trial herein and for punitive damages of $5,000,000.00, with interest thereon.

## AS AND FOR A THIRD CAUSE OF ACTION

38. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "37" as though fully set forth at length herein.

1886285-1                                9

39. That the foregoing acts of Plaintiff constitute a violation of 17 USC §301.

40. That based upon the foregoing Plaintiff has been damaged in the sum of $1,000,000.00, with interest thereon, and punitive damages in the sum of $5,000,000.00.

### AS AND FOR A FOURTH CAUSE OF ACTION FOR UNFAIR COMPETETION

41. Plaintiff repeats, reiterates and realleges each and every allegation in paragraphs "1" through "40" as though fully set forth at length herein.

42. The acts of Defendants as referred above, *inter alia*, falsely represent that Defendants Carroll and Terman are the authors of Copacabana Sexcapades and are unfair competition in violation of the Common Law of the State of New York.

43. Based upon the foregoing, Plaintiff has been damaged in a sum to be determined at a trial herein.

WHEREFORE, it is respectfully requested that the Court grant Plaintiff Milton judgment:

(a) On Plaintiff's First Cause of Action for a permanent injunction prohibiting Defendants from taking any acts to sell, distribute, advertise, display, reproduce, transfer or otherwise disseminate copies of Copacabana Sexcapades;

(b) On Plaintiff's Second Cause of Action for an award of damages to the be determined at trial, with interest thereon, based upon Defendants Carroll and Terman's intentions and

wrongful conversion of Plaintiff Milton's proprietary literary property, with punitive damages of $5,000,000.00, with interest thereon, and an award of attorney fees;

(c) On Plaintiff's Third Cause of Action for a violation of 17 USC 301 for damages in the sum of $1,000,000.00, with interest thereon, and punitive damages in the sum of $5,000,000.00

(d) On Plaintiff's Fourth Cause of Action for damages for unfair competition as a result of Defendants Carroll and Terman's unlawful conducted; and

(e) For such other and further relief as to this Court seems just and proper.

Dated:   East Meadow, New York
         April 4, 2007

CERTILMAN BALIN ADLER & HYMAN, LLP

By: _____
Edward G. McCabe, Esq. (EGM-6352)
Attorneys for Plaintiff
90 Merrick Avenue, 9th Floor
East Meadow, New York 11554
(516) 296-7000

1886285-1                      11

## VERIFICATION

STATE OF NEW YORK    )
                     )ss.:
COUNTY OF Nassau     )

KRISTIN B. MILTON, being duly sworn, deposes and says:

I have read the foregoing **COMPLAINT** and know the contents thereof; the same is true to my own knowledge, except as to the matters therein stated to be alleged upon information and belief, and as to those matters I believe them to be true.

_____
KRISTIN B. MILTON

Sworn to before me this
5th day of April, 2007

_____
NOTARY PUBLIC

JILLIAN C. MORHART
NOTARY PUBLIC, State of New York
No. 41-4687535
Qualified in Nassau County
Commission Expires October 31, 2010